Filed 10/28/22  P. v. Lightfoot CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DAVID LIGHTFOOT,<br><br>     Defendant and Appellant. | A160138<br><br>(City & County of San Francisco Super. Ct. No. 228385) |

Defendant David Lightfoot appeals after a jury found him guilty of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)) and battery on a transit passenger (§ 243.3), with an enhancement for use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)). The weapon was a folding knife with a three and a half-inch blade. Defendant contends the court prejudicially erred by giving standard instructions for the assault count and deadly-weapon enhancement that defined a deadly weapon as one that is "inherently deadly or . . . used in such a way that is capable of causing and likely to cause death or great bodily injury." It was error to give that instruction because a knife is not, as a matter of law, an "inherently deadly" weapon. (*People v. Aledamat* (2019) 8 Cal.5th 1, 6 (*Aledamat*).) The Attorney General concedes the error but contends it was harmless beyond a reasonable doubt under *Aledamat,* in

---

[1] All statutory references are to the Penal Code.

which the court found an identical instructional error harmless on similar facts. (*Id.* at p. 15.) We agree that *Aledamat* is indistinguishable and compels affirmance.

## Factual and Procedural History

Defendant, who introduced evidence that he suffers from schizophrenia, assaulted Kyle Simmons, a transgender woman he had never met, on a bus. Acting without perceptible external provocation, defendant punched Simmons in the jaw and stabbed her once in the center of her back, where he left the knife lodged.

Fortunately, the blade did not puncture Simmons's organs or spine. She needed medication for extreme pain, but not surgery. After doctors removed the knife and repacked the wound, it fully healed. An emergency room doctor testified that a stab wound to the back could puncture the aorta, "pop" a lung, or damage the spine, but a defense medical expert opined that it was highly unlikely that a three and a half-inch blade could ever have penetrated Simmons's spinal cord from the area where she was stabbed.

Defendant was charged with attempted murder (§ 187, subd. (a); § 664), assault with a nonfirearm deadly weapon (§ 245, subd. (a)(1)), and battery on a transit passenger (§ 243.3). The information included allegations to support enhancements, as to all three counts, for infliction of great bodily injury (§ 12022.7, subd. (a)) and, as to the first and third counts, for personal use of a deadly or dangerous weapon (§ 12022, subd. (b)(1)).

With regard to the latter enhancement, the court instructed the jury using CALCRIM No. 3145. The instruction stated that a deadly or dangerous weapon "is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that is capable of causing and likely to cause death or great bodily injury." It directed the jury, "In deciding

2

whether an object is a deadly weapon, consider all the surrounding circumstances, including when and where the object was possessed, and where the person who possessed the object was going, and whether the object was changed from its standard form and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose."

On count two, assault with a nonfirearm deadly weapon, the court gave CALCRIM No. 875. The instruction stated that a deadly weapon other than a firearm "is any object, instrument, or weapon that is inherently deadly or one that is used in such a way that is capable of causing and likely to cause death or great bodily injury."[2]

Discussing the elements of assault with a deadly weapon in her closing argument, the prosecutor said, "The deadly weapon here is obviously the knife." As for the deadly-weapon enhancement, she told the jury, "You are not going to consider it for count 2, because it's already part of [the crime]. Assault with a deadly weapon, we already talked about this deadly weapon." She then said: "What do you do with the deadly weapon for this allegation to apply, you hit someone with it or you stab that knife plunging it deeply into

[2] In September 2019, the Judicial Council amended CALCRIM Nos. 875 and 3145 by including a definition of "inherently deadly" and adding bench notes directing courts to use the "inherently deadly" language "only if the object is a deadly weapon as a matter of law." (Judicial Council of Cal., Crim. Jury Instns. Bench Notes to CALCRIM No. 875; *id.,* Bench Notes to CALCRIM No. 3145; Jud. Council of Cal., Advisory Com. on Crim. Jury Instns., Jury Instructions: Revisions to Criminal Jury Instructions (July 19, 2019) pp. 1, 4 <https://jcc.legistar.com/View.ashx?M=F&ID=7675719&GUID= 9AEEFCDC-EDE9-4877-B55B-B46FE6D36AD8> [as of Oct. 28, 2022].) Though this case was tried in January 2020, the court used pre-September 2019 versions of CALCRIM Nos. 875 and 3125 identical to the versions at issue in *Aledamat*, which the court deemed "problematic." (*Aledamat*, *supra,* 8 Cal.5th at p. 15.)

someone's back. It's an object. Any object *used inherently in a deadly way likely to cause death or great bodily injury*, a knife plunged into someone's back reaching but not penetrating the spine is exactly that type of weapon" (italics added).

Those comments aside, the prosecutor devoted her closing argument to the intent-to-kill element of attempted murder, the unconsciousness defense to that charge, and whether Simmons suffered great bodily injury. Defendant's attorney took a similar tack; his closing never addressed the deadly-weapon element—or any other element—of the assault with a deadly weapon count or deadly-weapon enhancement.

The jury deliberated for approximately 20 hours. It asked several questions and requested readback of several passages. The questions and readbacks concerned expert psychological testimony and aspects of defendant's history relevant to the intent-to-kill element of, and unconsciousness defense to, the attempted murder count. The jury found defendant not guilty on that count but guilty on the counts of assault with a deadly weapon and battery of a transit passenger. It found not true the allegation that defendant inflicted great bodily injury but found true the allegation, as to the battery count, that he used a deadly weapon. The court sentenced defendant to four years in prison,[3] and defendant timely appealed.

## Discussion

Defendant's sole contention is that the court erred by giving instructions that enabled the jury to find the deadly-weapon element of the two instructions proven because the knife was "inherently deadly." Our

---

[3] The sentence consists of the upper term of four years on count 2, assault with a nonfirearm deadly weapon. The court imposed and stayed, pursuant to section 654, sentences of eight months on count 3 and one year on the related deadly-weapon enhancement.

Supreme Court has held that a knife can never qualify as an "inherently deadly" weapon. (*Aledamat, supra*, 8 Cal.5th at p. 6 ["Because a knife can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently deadly weapons"]; *id.* at p. 8 ["a knife is not inherently deadly *as a matter of law*"].)[4] The Attorney General concedes that, like the trial court in *Aledamat*, the court here erred by "presenting the jury with two theories by which it could find the [knife] a deadly weapon: (1) inherently or (2) as used. The first theory (inherently) is incorrect, but the second theory (as used) is correct." (*Id.* at p. 7) *Aledamat* labels this type of error "alternative-theory instructional error." (*Id.* at p. 7, fn. 3.)[5]

The question here is whether the error was prejudicial. As clarified in *Aledamat*, if a court erroneously instructs on two theories, one of which is valid and one of which is "legally inadequate," a reviewing court must evaluate prejudice under "the usual 'beyond a reasonable doubt' standard of review established in *Chapman v. California* (1967) 386 U.S. 18, 24 . . . for federal constitutional error." (*Aledamat, supra*, 8 Cal.5th at p. 3.) That

---

[4] *Aledamat* involved a box cutter, but the court stated that " 'A box cutter is a type of knife' that, 'because it is designed to cut things and not people,' is not an inherently deadly weapon as a matter of law." (*Aledamat, supra*, 8 Cal.5th at p. 6.)

[5] *Aledamat* distinguishes "two categories of incorrect theories": "factually inadequate" ones, in which it is error to instruct because the theory is not supported by the evidence, and "legally inadequate" ones, in which it is error to instruct because applying the theory to the facts of a case would be contrary to law in a way that a jury is ill equipped to detect. (*Aledamat, supra*, 8 Cal.5th at p. 7.) In *Aledamat*, the "inherently deadly" theory was "legally inadequate." (*Id.* at p. 8.) Erroneous instruction on such a theory is subject to a "higher standard" of harmlessness review than erroneous instruction on a factually inadequate theory. (*Ibid.*) Here, the "inherently deadly" theory was legally inadequate for the same reasons as in *Aledamat*, and the same harmlessness standard applies.

standard requires a court to reverse a conviction "unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Ibid.*) *Aledamat* rejected the contention that alternative-theory instructional error is harmless only if the verdict shows affirmatively that the jury relied on the valid theory. (*Id.* at pp. 11–13.) There are several formulations of how a court may analyze prejudice in such a case (*id.* at pp. 9–13), but we need look no further than the analysis in *Aledamat* of facts that in all essential respects are indistinguishable from those in this case.

In *Aledamat*, the defendant "pulled a box cutter out of his pocket and extended the blade; from three or four feet away, defendant thrust the blade at the [victim] at waist level, saying, 'I'll kill you.' Two nearby police officers . . . intervened and arrested defendant."[6] (*Aledamat*, *supra*, 8 Cal.5th at p. 4.) The People charged him with assault with a nonfirearm deadly weapon (§ 245, subd. (a)(1)) and making a criminal threat (§ 422). As to the threat count, the People alleged that he personally used a deadly weapon. (§ 12022, subd. (b)(1).) For both the count of assault with a deadly weapon and the deadly-weapon enhancement, the trial court in *Aledamat* used the same standard instructions used here—that is, the pre-September 2019 versions of CALCRIM Nos. 875 and 3145[7] (see fn. 2, *ante*). (*Aledamat*, *supra*, at pp. 4–5.)

---

[6] *Aledamat* differs from this case in that the defendant there did not touch the victim with the knife—let alone drive it several inches into his back. But the difference is immaterial.

[7] The only difference is that, in this case, the court included certain optional, bracketed language in CALCRIM No. 3145 (shown below by italics) that the trial court in *Aledamat* omitted: "consider all the surrounding circumstances, including when and where the object was possessed, *and where the person who possessed the object was going, and whether the object was changed from its standard form* and any other evidence that indicates

*Aledamat* thus involved precisely the same crime, same enhancement, and same pre–September 2019 CALCRIM instructions as this case. Applying the *Chapman* test, the court held that "[a] number of circumstances convince us beyond a reasonable doubt that the error was harmless." (*Aledamat*, *supra*, 8 Cal.5th at p. 13.) Each of those circumstances is also present here.

First, the court reasoned that although the wording of the instruction made it theoretically possible for a jury to believe that it could find a knife "inherently deadly," the use of both CALCRIM Nos. 875 and 3145 made it "unlikely the jury would simply view the [knife] as inherently deadly without considering the circumstances, including how defendant used it." (*Aledamat*, *supra*, 8 Cal.5th at p. 14.)[8]

---

whether the object would be used for a dangerous, rather than a harmless, purpose." (Compare CALCRIM No. 3145 with *Aledamat*, *supra*, 8 Cal.4th at p. 14.) If anything, the additional language underscored the "as-used" alternative.

[8] To reach that conclusion, the court reasoned as follows: "The argument that the error was prejudicial supposes that, under the instructions, the jury would believe there were two separate ways it could find the [knife] to have been a deadly weapon. The first method would be simply to find it was inherently deadly without considering any of the surrounding circumstances. The second method would be to consider how defendant used it. Technically, this is correct. The court used the disjunctive 'or,' which, out of context, would seem to permit such separation. In context, however, it is unlikely the jury would so view the instructions. [¶] The instruction referred to an object that is 'inherently deadly or one that is used in such a way that it is capable of causing and likely to cause death or . . . great bodily injury.' This juxtaposition at least indicates what the 'inherently deadly' language was driving at. Additionally, the jury was also instructed: 'In deciding whether an object is a deadly weapon, consider all of the surrounding circumstances . . . .' This part of the instruction suggested the question was unitary, that is, that the jury had to consider all of the circumstances in deciding whether the object was a deadly weapon, *either* inherently *or* as used. The jury would likely view the 'inherently deadly'

7

Second, *Aledamat's* prejudice analysis rests on a record that is similar to the record in this case. The court noted that one "nonexclusive way" to find an alternative-theory instructional error harmless is to "examine[] what the jury necessarily did find and ask[] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." (*Aledamat*, *supra*, 8 Cal.5th at pp. 14–15.) The court applied that standard as follows: "Here, under the instructions, the jury necessarily found the following: (1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person. [¶] Additionally, the jury must have considered the term 'inherently deadly' to mean *something*. . . . [T]he theoretical risk is that, because the court did not define the term, the jury might have applied its common understanding to find the [knife] deadly because it is sharp and used for cutting. [Citations.] But if the jury did so, it would necessarily find the [knife] deadly in the colloquial sense of the term—i.e., readily capable of inflicting deadly harm— and that defendant used it as a weapon. [¶] 'No reasonable jury that made all

language in light of this additional instruction that it had to consider all of the circumstances." (*Aledamat*, *supra*, 8 Cal.5th at pp. 13–14.)

Defendant argues that we cannot assume jurors applied the "consider all . . . surrounding circumstances" directive in CALCRIM No. 3145, which governs only the deadly-weapon *enhancement*, to the assault with a deadly weapon *count*, for which the instruction given, CALCRIM No. 875, lacks such language. But in *Aledamat*, the dissent made the exact same point. (8 Cal.5th at p. 21 (conc. & dis. opn. of Cuellar, J.).) The majority nonetheless treated the "all circumstances" language as governing both the count and the enhancement. (*Id.* at pp. 13–14.)

of these findings could have failed to find' that defendant used the [knife] in a way that is capable of causing or likely to cause death or great bodily injury." (*Id.* at p. 15.) Precisely the same may be said here.

Finally, the *Aledamat* court relied on the closing arguments. The court noted that "no one ever suggested to the jury that there were two separate ways it could decide whether the [knife] was a deadly weapon." (*Aledamat, supra*, 8 Cal.5th at p. 14.) Here, as indicated above, the prosecutor's closing argument focused on the mental element of the attempted murder count. Her only use of the word "inherently" was in a muddled comment that, as defendant puts it, "conflated" the two theories of deadliness by describing a "deadly weapon" as "[a]ny object used inherently in a deadly way likely to cause death or great bodily injury." Whatever the prosecutor meant by that, she finished her comment by stating that "a knife plunged into someone's back reaching but not penetrating the spine is exactly that type of weapon." The prosecutor thus urged the jury to find the knife to be a deadly weapon based not on its inherent nature, but on how it was used—"plunged into someone's back."

In arguing to the contrary, defendant notes that, in summarizing the elements of assault with a deadly weapon, the prosecutor said, "[t]he deadly weapon here is obviously the knife." But "obviously" is not "inherently." The comment did not imply that the knife was inherently deadly; it conveyed only that it was "obvious" that the knife was the weapon on which the prosecution was relying to satisfy the deadly-weapon element. Defendant also relies on his lawyer's closing statement about a different issue, the elements of attempted murder.[9] But that argument did not address the deadly-weapon

_____

[9] To define attempted murder, the court gave CALCRIM No. 600, which requires proof that the defendant "took at least one direct but ineffective step

element. Indeed, defense counsel told the jury that "[t]he three main questions or decisions that you are going to have in front of you [are], one, whether . . . [defendant] was conscious at the time of the incident. Two, . . . [whether he] did an act or direct step for killing Ms. Simmons and had the intent to kill. [¶] And three, whether . . . [he] inflicted . . . great bodily injury." The rest of his closing argument exclusively addressed those three issues. As in *Aledamat*, defendant did not contest that the knife was a deadly weapon for purposes of the relevant count and enhancement. (*Aledamat, supra,* 8 Cal.5th at p. 14.)

Defendant never attempts to distinguish *Aledamat*. Instead, he adopts without attribution arguments from a dissent in that case. He contends, for example, that the error cannot be deemed harmless based on defendant's failure to contest the deadliness issue because he never expressly or implicitly conceded that issue. Defendant's theory finds support only in the dissent, which depicts the majority opinion as inconsistent with authority it

---

toward killing another person; [¶] AND [¶] . . . intended to kill that person." To qualify as a "direct step," the instruction clarifies, an act must "indicate[] a definite and unambiguous intent to kill." Defense counsel argued as follows: "the instructions for a direct step [require] . . . an act that shows that you had an unambiguous . . . intent to kill . . . . [¶] . . . You have to look at the act. The act is one stab to the back of Ms. Simmons. This is not a situation where [defendant] tried to cut[] Ms. Simmons['s] throat. Tries to stab her in the head. This is one stabbing to the back. And you have to ask yourself, does that one act . . . indicate a definite and unambiguous intent to kill? [¶] . . . [¶] . . . [Y]ou really have to . . . question whether or not this act would have resulted in death. Completely different situation from if [defendant had] continued to stab Ms. Simmons. The State would have a much stronger case here. They could argue, look, if he didn't stop stabbing Ms. Simmons, death would have been likely but here you have one stab in the back and the state's argument relies a lot . . . on what potentially could have happened. [¶] But you heard from [the defense medical expert] that it was pretty unlikely that this [stabbing] is going to result in . . . serious injury. There is no evidence that this was going to result in . . . death."

reads to require a concession. (*Aledamat*, *supra*, 8 Cal.5th at pp. 21–22 (conc. & dis. opn. of Cuellar, J.).) On that disputed point, we must follow the majority's contrary view.

Defendant notes that his jury deliberated for 20 hours, submitted many questions and readback requests, acquitted him of attempted murder, and found not true the great bodily injury allegation. But the questions and readbacks all related to the intent element of, and unconsciousness defense to, attempted murder—not whether the knife was a deadly weapon. Nothing in the record suggests the jury found that question close.

Defendant likens this case to *People v. Baratang* (2020) 56 Cal.App.5th 252, in which our colleagues in Division Three distinguished *Aledamat*. The instructional error in *Baratang* concerned a charge of felony theft from an elder (§ 368, subd. (d)) prosecuted on alternative theories of theft by larceny and by identity theft. (*Id.* at pp. 255–257.) The trial court erroneously instructed the jury that only the first theory requires a theft of at least $950. (*Baratang, supra,* at pp. 257–258.) In fact, each theory is subject to a $950 minimum. (*Id.* at p. 262.) The prejudice inquiry thus turned on whether jurors could have found the defendant guilty on the identity-theft theory without finding that he stole at least $950. (*Id.* at p. 263.) The *Baratang* court held that, "[u]nlike the situation in *Aledamat*, we cannot 'rule out a reasonable possibility' that the jury relied on the identity theft theory." (*Baratang, supra,* at p. 264.) There, in closing argument the prosecutor relied heavily on the lack of a monetary threshold to urge jurors to rely on an identity-theft theory. (*Ibid.*) Because the prosecutor here did not urge jurors to rely on the "inherently deadly" theory, *Baratang* affords no basis to distinguish *Aledamat* or to find the instructional error prejudicial.

## Disposition

The judgment is affirmed.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.